**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALMONDNET, INC. and INTENT IQ, LLC, | Case No. 1:23-CV-00220-MN |
| Plaintiffs, | |
| v. | |
| FREEWHEEL MEDIA, INC. and BEESWAX.IO CORP., | |
| Defendants. | |

<u>**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

Ryan P. Newell (No. 4744)
Robert M. Vrana (No. 5666)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Of Counsel

Rodney Square
1000 North King Street
David Silbert                                                  Wilmington, DE 19801
Leo L. Lam                                                     (302) 571-6600
Katie Lynn Joyce                                               rnewell@ycst.com
Anna Porto                                                     rvrana@ycst.com
Maile Yeasts-Rowe
Oliver J. Fong
Janay M. Williams
KEKER, VAN NEST & PETERS LLP
dsilbert@keker.com
llam@keker.com
kjoyce@keker.com
aporto@keker.com
myeatsrowe@keker.com                                           Attorneys for Defendants FREEWHEEL
ofong@keker.com                                                MEDIA, INC. and BEESWAX.IO.CORP.
jwilliams@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.  OVERVIEW OF '307 AND '249 PATENTS ..................................................... 2

IV.   LEGAL STANDARD ......................................................................................... 6

V.    ARGUMENT ...................................................................................................... 8

      A.    Alice Step 1: The claims are directed to an abstract idea. ...................... 8

      B.    Alice Step 2: The claims do not contain an inventive concept, whether
            their elements are considered individually or in combination. ............ 10

VI.   CONCLUSION ................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ............................................................................ *passim*

*AlmondNet, Inc. v. Viant Tech. Inc.*,
   Case No. 1:23-cv-00174-MN (D. Del.) ................................................2

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ...........................................................8

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) .....................................................10

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...........................................................7

*Buffalo Patents, LLC v. Spotify USA Inc.*,
   Case No. 1:22-cv-01335-MN, D.I. 36 (D. Del.) ..................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ...........................................................12

*Clear with Computers, LLC v. Altec Indus., Inc.*,
   2015 WL 993392 (E.D. Tex. Mar. 3, 2015), *aff'd*, 636 F. App'x 1015 (Fed.
   Cir. 2016) .............................................................................................9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017) ...........................................................7

*Content Extraction and Transmission LLC v. Well Fargo Bank, NA*,
   776 F.3d 1343 (Fed. Cir. 2014) ...................................................2, 8, 14

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020) ..........................................10, 11, 12, 13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*,
   758 F.3d 1344 (Fed. Cir. 2014) ...........................................................9

*DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*,
   346 F. Supp. 3d 616 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019) ....................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ....................................................7, 8, 9, 12

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021)......................................................................9, 10, 14

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)................................................................................9, 11

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
    127 F. Supp. 3d 506 (D. Md. 2015), *aff'd*, 850 F.3d 1332 (Fed. Cir. 2017) ........................13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)................................................................................6

*In re Morsa*,
    809 F. App'x 913 (Fed. Cir. 2020) ...........................................................................10

*Move, Inc. v. Real Est. All. Ltd.*,
    721 F. App'x 950 (Fed. Cir. 2018) ...........................................................................8

*MyMail, Ltd. v. ooVoo, LLC*,
    2021 WL 3671364 (Fed. Cir. Aug. 19, 2021)..............................................................8

*Nice Ltd. v. Callminer, Inc.*,
    2020 WL 529709 (D. Del. Feb. 3, 2020) ....................................................................9

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)................................................................................11

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
    2015 WL 1739256 (N.D. Cal. Apr. 14, 2015), *aff'd*, 655 F. App'x 848 (Fed.
    Cir. 2016) ................................................................................................................7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)................................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)................................................................................11, 14

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..................................................................................7

*USADATA, Inc. v. DATAWIDGET LLC*,
    2021 WL 5084283 (D. Ariz. 2021)...........................................................................13

*USC IP P'ship, L.P. v. Facebook, Inc.*,
    576 F. Supp. 3d 446 (W.D. Tex. 2021).......................................................................9, 13

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018)................................................................................7

*Weisner v. Google LLC,*
   51 F.4th 1073 (Fed. Cir. 2022) .............................................................................................13

**Statutes**

35 U.S.C. § 101 ................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. Proc. 12 .............................................................................................................2

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................................1

https://www.merriam-webster.com/dictionary/widget .................................................13

Under Federal Rule of Civil Procedure 12(b)(6), Defendants FreeWheel Media, Inc. and Beeswax.io Corp. (collectively "Defendants") move to dismiss Counts I and III of the Complaint filed by Plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively "Plaintiffs" or "AlmondNet"). Those counts assert that Defendants infringe claim 1 of U.S. Patent No. 7,979,307 ("the '307 patent") and claim 1 of U.S. Patent No. 8,775,249 ("the '249 patent"), which are both ineligible for patent protection under 35 U.S.C. § 101.

## I.      INTRODUCTION

Claim 1 of the '307 patent and claim 1 of the '249 patent are directed to the abstract idea of collecting, storing, and tracking profile data. The patents assert that, in the prior art, "information commerce [was] focused on the sale of whole databases"—e.g., an entire mailing list—even though "specific attributes of information"—e.g., someone's income, age, or education—may have "a discrete economic value." *See* '307 patent at 1:53-63.[1] The patents purport to solve this problem by claiming "a mercantile method" that "make[s] viable the economic commerce in information attributes." *Id.* at 1:23-26, 3:19-43. The patents identify no purported ***technological*** barrier to collecting, tracking, and storing such information attributes— because none existed—nor do they describe any technological solution needed to overcome any such barrier. Instead, the patents claim—at most—a ***business method*** involving collecting, tracking, and storing profile data that is implemented on standard computer components performing their conventional functions.

Courts have long held that such claims are directed to an abstract idea and are unpatentable under 35 U.S.C. § 101. Indeed, the two claims at issue here are paradigmatic

---

[1] The '307 and '249 patents issued from the same application chain and share the same specification. For ease of reference, citations to the specification herein use column and line numbers of the '307 patent.

examples of ineligible subject matter because "[t]he concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions." *Content Extraction and Transmission LLC v. Well Fargo Bank, NA*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Accordingly, Defendants request that the Court dismiss Counts I and III of the Complaint.[2]

## II.   NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed this action asserting four patents.[3]  Two of those patents are at issue in this motion: the '307 and '249 patents, which issued from the same application chain and share a common specification.  *See* D.I. 1.  The complaint attaches and incorporates claim charts alleging that Defendants infringe claim 1 of the '307 patent and claim 1 of the '249 patent.  *See* D.I. 1-2 and 1-6.

## III.   OVERVIEW OF '307 AND '249 PATENTS

The '307 patent issued in July 2011 and the '249 patent issued in July 2014.  Both claim priority to an application filed in June 2000—long before the Supreme Court issued its 2014 *Alice* decision.  The patents recite "a mercantile method directed to brokerage of attributes of

---

[2] This motion is directed to only two claims—claim 1 of the '307 patent and claim 1 of the '249 patent—because they are the only claims of those patents that the Complaint alleges Defendants infringe.  *See Buffalo Patents, LLC v. Spotify USA Inc.*, Case No. 1:22-cv-01335-MN, D.I. 36 (D. Del.).  While Plaintiffs could conceivably assert other claims of the '307 and '249 patents if the Court grants this motion, they would do so at their peril because those other claims add only incidental limitations to the two at issue here.  Thus, resolution of this motion will likely dispose of two of the four asserted patents in this case.  Moreover, because Plaintiffs' patents are all similar—and all face similar obstacles under Section 101—Defendants believe that deciding this motion now will streamline and promote resolution of this entire case, and possibly of other *AlmondNet* cases as well, since they involve similar or overlapping patents.  *See, e.g.*, *AlmondNet, Inc. v. Viant Tech. Inc.*, Case No. 1:23-cv-00174-MN (D. Del.) (asserting the same four patents as here).  Accordingly, Defendants believe that deciding this motion now, at the Rule 12 stage, will be an efficient use of the Court's resources.

[3] The four patents-in-suit are the '307 and '249 patents and U.S. Patent Nos. 7,861,260 and 11,564,015.

information." '307 patent at 1:25-27.  Their specification acknowledges that commerce in information was already commonplace—"[f]or example, paying for a database credit check for an individual or buying a mailing list have become common practice." *Id.* at 1:31-34.  But it asserts that, "[u]nfortunately, the current state of information commerce is focused on the sales of whole databases, whole records, or evaluations based on single or clusters of records." *Id.* at 1:53-55.  As a result, "[i]n commercial applications where specific attributes of information strongly affect the value of evaluations, there is a need in the art for commerce in such attributes." *Id.* at 1:55-58.  "Examples of attributes may be: name, address, income, age, education, details of product purchase transactions over the Internet, credit rating, etc." *Id.* at 7:19-21.

Claim 1 of each patent recites an "automated method of collecting profiles of Internet-using entities." *See id.* at 16:36-60 (claim 1); '249 patent at 16:46-17:4 (claim 1).  Claim 1 of the '307 patent is reproduced below, with emphasis added to identify the core nature of each element.

| **Claim 1 of the '307 patent** |
| --- |
| **1.**  An automated method of ***collecting profiles of Internet-using entities***, the method comprising: |
| (a)  electronically ***receiving*** at a programmed computer system coupled to a global computer network, from at least one server controlled by one of a plurality of unaffiliated third parties operating respective websites, ***a partial profile*** of an entity that uses a user computer coupled to the global computer network and accessing the website, ***which partial profile contains at least one profile attribute*** related to the entity, and automatically with the computer system ***storing*** the received partial profile; |

| Claim 1 of the '307 patent |
| --- |
| (b)   wherein receiving the partial profile is achieved *by automatic electronic URL redirection* from a portion of a page of the website accessed by the user computer; |
| (c)   automatically with the computer system electronically *adding the received partial profile to a maintained profile believed to be related to the same entity*; |
| (d)   automatically with the computer system *generating and storing an electronic record of which* of the plurality of unaffiliated *third parties contributed* to the maintained profile *particular profile attributes*; |
| (e)   wherein *the maintained profile*, including the added partial profile, *comprises data used in targeting* third-party *advertisements* to the user computer over the global computer network. |

As shown above, the claim fundamentally recites three steps:

1. receiving and storing profile data [element 1(a)];

2. adding the profile data to an existing stored profile believed to relate to the same entity [element 1(c)]; and

3. keeping track of which third party contributed which data to the stored profile [element 1(d)].

The claim further specifies that (1) the receipt of the profile data is achieved by "automatic electronic URL redirection" [element 1(b)]; and (2) the stored profile includes data used to target advertisements [element 1(e)].  Only one element—"automatic electronic URL redirection"—is even arguably technological.  And as discussed below, that conventional function cannot save the claim from ineligibility under Section 101.

Claim 1 of the '249 patent is functionally identical to claim 1 of the '307 patent.  The table below shows redlined differences between the two claims.  As shown below, the primary difference is reversing the order of limitations 1(b) and 1(c).  But reversing the order in which

those limitations are recited has no effect on the order in which they are performed, because the "wherein receiving" limitation modifies element 1(a) in both claims.  And the other minor differences between claim 1 of the '249 patent and claim 1 of the '307 patent—such as changing "a maintained profile" to "an electronically stored profile"—also have no effect on the Section 101 analysis.

| **Claim 1 of the '249 patent** |
| --- |
| **1**.  An automated method of collecting profiles of Internet-using entities, the method comprising: |
| (a) electronically receiving at a programmed computer system coupled to a global computer network, from at least one server controlled by one of a plurality of unaffiliated third parties ~~operating respective websites~~, a partial profile of an entity that uses a user computer coupled to the global computer network and accessing ~~the~~a website, which partial profile is available to one of the third parties and contains at least one profile attribute related to the entity~~, and automatically with the computer system storing the received partial profile~~; |
| (~~c~~b) automatically with the computer system electronically storing the received partial profile by adding the received partial profile to ~~a maintained~~an electronically stored profile, which stored profile is believed to be related to the same entity; |
| (~~b~~c) wherein receiving the partial profile is achieved ~~by~~as a result of automatic electronic URL redirection from a portion of a page of the website accessed by the user computer; and |
| (d) automatically with the computer system generating ~~and storing~~an electronic record of which of the plurality of unaffiliated third parties contributed to the ~~maintained~~stored profile particular profile attributes; |
| (e)  wherein the ~~maintained~~stored profile, including the added partial profile, comprises data used in targeting third-party advertisements to the user computer over the global computer network. |

The patents' shared specification makes clear—as the claims themselves do—that the alleged invention is a ***business strategy***, not a technological breakthrough.  It describes the

invention as "a mercantile method." '307 patent at 1:23-27; *see also id.* at Abstract, 3:18-23. And the alleged need that the patents purport to solve is a lack of commerce in discrete, valuable units of information—not any technological limitation. *See, e.g.*, *id.* at 1:55-63 (identifying purported need "[i]n commercial applications . . . for commerce in such attributes."); *id.* at 1:63-66 ("More specifically, there remains a need in the art for assigning values to information attributes or for managing value assignments to information attributes."); *id.* at 11:18-20 ("Since the present invention is directed to the value of details of a profile, it is an object of the present invention to facilitate the transfer of rights to such particulars."). Moreover, the patent acknowledges that the claimed method is to be performed on a conventional computer system. *See id.* at 10:57-63 ("The preferred embodiment of the present invention relates to the use of a procedure on a computer attached to a network, Internet, Intranet, LAN, WAN, wireless packet communication system or hybrid composite of any of the above whereby data is exchanged by purchase, sale, trade, or brokerage and micro payments of royalties as a pricing structure that may accompany the data exchange.").

## IV.    LEGAL STANDARD

As this Court knows, patent eligibility under 35 U.S.C. § 101 is determined by applying the two-step framework set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Under that framework, a claim is patent-ineligible if (1) it is directed to an abstract idea, and (2) its particular limitations, considered both individually and as an ordered combination, lack an inventive concept sufficient to transform the nature of the claim into a patent-eligible application. *Id.* at 217-18.

At Step 1, courts will also examine whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v.*

*Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).  The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101[.]"  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).  Consequently, "one helpful way of double-checking . . . whether the claims meet the requirement of an inventive concept" involves asking whether the "claims [are] so result-focused, so functional, as to effectively cover any solution to an identified problem."  *Id.*

A claim directed to an abstract idea is ineligible under Section 101 unless, at Step 2, it "contains an inventive concept sufficient to transform" the idea into a patent-eligible application.  *Alice*, 573 U.S. at 221.  To pass muster at Step 2, the claim must include additional features that are "more than well-understood, routine, conventional activity."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

"There is no question that a court may examine at the pleading stage whether a patent is directed to eligible subject matter under 35 U.S.C. § 101."  *Shortridge v. Found. Constr. Payroll Serv., LLC*, 2015 WL 1739256, at *6 (N.D. Cal. Apr. 14, 2015) (granting defendants' motion for judgment on the pleadings under Section 101), *aff'd*, 655 F. App'x 848 (Fed. Cir. 2016); *see also, e.g.*, *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385-86 (Fed. Cir. 2018) (affirming determination of ineligibility on a 12(b)(6) motion).  Claim construction is not required.  *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming district court's determination of § 101 motion at motion to dismiss stage prior to claim construction because plaintiff proposed no construction that would

have altered the § 101 analysis).  Further, while *Alice*'s inventiveness inquiry may occasionally

involve "underlying issues of fact," a factual dispute arises only if the claims themselves capture

the alleged inventiveness or are directed to an allegedly inventive concept contained in the

specification.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

## V.      ARGUMENT

### A.      *Alice* **Step 1: The claims are directed to an abstract idea**.

Claim 1 of the '307 patent and claim 1 of the '249 patent are directed to the abstract idea

of collecting, storing, and tracking profile data.  These claims fall within a well-established

category of abstract ideas that are ineligible for patent protection.  *See Elec. Power Grp.*, 830

F.3d at 1353-54 (collecting Federal Circuit cases holding that collection, analysis, and

presentation of information are abstract).

As shown above, the two claims at issue here fundamentally recite the steps of: (1)

receiving and storing profile data, where the receipt is achieved by "automatic electronic URL

redirection"; (2) adding the profile data to an existing stored profile believed to relate to the same

entity; and (3) keeping track of which third party contributed which data to the stored profile,

where the profile contains data used to target advertisements.  Like the claims the Federal Circuit

held ineligible in *Content Extraction*, these claims are "drawn to the basic concept of data

recognition and storage," which is an ineligible abstract idea.  776 F.3d at 1347.

Indeed, the Federal Circuit has consistently deemed similar claims directed to data-

collection and data-organization carried out by generic computer components to be abstract.  *See,

e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 2021 WL 3671364 at *5 (Fed. Cir. Aug. 19, 2021) (finding

ineligible claims that amount to "invoking computers as a tool to perform the abstract ideas of

collecting information, analyzing information, and presenting the results of the analysis"); *Move,

Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 955 (Fed. Cir. 2018) (finding ineligible claims

directed to the "general steps of collecting, organizing, and presenting information" using a computer); *Elec. Power Grp.*, 830 F.3d at 1353 (finding ineligible claim focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis"). Similarly, tracking and categorizing data is abstract. *See Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1365 (Fed. Cir. 2015) (finding ineligible a claim directed to tracking and storing data related to a user's purchases); *Alice*, 573 U.S. at 225 (finding electronic recordkeeping to be an abstract concept and a basic function of a computer).[4]

For example, in *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, the Federal Circuit held ineligible a claim reciting the generation of a device profile by generating a first data set, then generating a second data set, and then combining the data sets to create the device profile. 758 F.3d 1344, 1351 (Fed. Cir. 2014). The Federal Circuit found that the claim was directed to the "abstract process of gathering and combining data that does not require input from a physical device." *Id.* Like the claims in *Digitech*, the claims here recite the collection and combination of data and are thus directed to an ineligible abstract idea.

While the claims here recite that the profiles are for use in targeting advertisements, that usage context only underscores their abstract nature. Courts routinely find claims directed to collecting and manipulating data to target advertisements to be abstract. In *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021), for example, the Federal Circuit held

---

[4] District courts also routinely find such claims ineligible. *See, e.g.*, *Nice Ltd. v. Callminer, Inc.*, 2020 WL 529709 (D. Del. Feb. 3, 2020) (finding ineligible a claim comprising the steps of "receiving" "generating" and "identifying" data, and "displaying" information based on that data, because it was directed to the abstract idea of "collecting, displaying, and manipulating data"); *USC IP P'ship, L.P. v. Facebook, Inc.*, 576 F. Supp. 3d 446, 456 (W.D. Tex. 2021) (finding ineligible claims directed to "collecting, analyzing and using intent data"); *Clear with Computers, LLC v. Altec Indus., Inc.*, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015), *aff'd*, 636 F. App'x 1015 (Fed. Cir. 2016) (finding ineligible claims "directed to the abstract idea of creating a customized sales proposal for a customer").

ineligible claims directed to "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device." *Id.* at 1361-62.  The court reasoned that the claims provided no improvement to computer functionality and did "nothing more than implement a computer to achieve the abstract idea of providing targeted advertising to the mobile device user." *Id.* at 1365.  Likewise, the claims at issue here do not purport to improve the technical operation of any computer.  Instead, they merely recite the abstract idea of collecting and organizing data with generic computer components. *See* '307 patent at 10:57-60.  Such claims are abstract and thus ineligible for patent protection. *Free Stream Media*, 996 F.3d at 1365; *see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019) ("concept [of targeting marketing] is a fundamental practice that dates back to newspaper advertisements"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (finding ineligible claims reciting "at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool"); *In re Morsa,* 809 F. App'x 913, 916 (Fed. Cir. 2020) (finding ineligible claim "directed to the concepts of targeting advertisements for a user, and using a bidding system to determine how the advertisements will be displayed").

Thus, claim 1 of the '307 patent and claim 1 of the '249 patent are directed to an abstract idea under *Alice* Step 1.

B.   *Alice* **Step 2: The claims do not contain an inventive concept, whether their elements are considered individually or in combination.**

At the second step of the *Alice* framework, the Court "must examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221.  "To save a patent at step

two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *see also, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

The claim "must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Alice*, 573 U.S. at 221. To do so, the claim must do more than apply the abstract idea "with a computer." *Id.* at 223. "The introduction of a computer into the claims does not alter the analysis at [*Alice*] step two." *Id.* at 222. "Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept." *Intell. Ventures I*, 792 F.3d at 1367.

Here, the two claims at issue recite only generic computer components performing their conventional functions, which is insufficient to transform an abstract idea into a patent-eligible invention. Specifically, the claims recite a "computer system," a "user computer," a "server," and a "global computer network." Such generic components fail to add any inventive concept that could salvage the claims at Step 2. *See Customedia*, 951 F.3d at 1366 ("Aside from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including a programmable receiver unit, a storage device, a remote server, and a processor."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) ("[M]erely reciting an abstract idea performed on a set of generic computer components, as claim 1 does here, would not contain an inventive concept.").

In *Customedia*, for example, the Federal Circuit analyzed claims involving a "data delivery system for providing automatic delivery of . . . specifically identified advertising data"

in which "data is received and processed by a 'programmable local receiver unit' which includes at least one . . . data storage section adapted specifically for storing the specifically identified advertised data." 951 F.3d at 1363. The court held that those claims lacked an inventive concept because "the invocation of already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional." *Id.* at 1366. Here, the claims provide significantly ***less*** technical detail than those in *Customedia*. Instead, they use functional language designed to preempt practice of the abstract idea itself, and thus fail the requirements for patent-eligibility. *See Elec. Power Grp.* 830 F.3d at 1354 (noting that Federal Circuit has "recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more . . . is abstract as an ancillary part of such collection and analysis").

Nor do the claims solve a technological problem. The specification does not even reference any problem in the relevant technology, let alone claim to solve one. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (noting that courts can "look[] to the specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention" (cleaned up)). Indeed, the specification describes the alleged invention as "a mercantile method" and identifies the alleged need as a lack of "focus[]" on discrete pieces of valuable data in "information commerce . . . ." '307 patent at 1:23-27, 1:53-65, 3:18-23. Moreover, even if the claims recited some kind of technological improvement (which they do not), they are entirely "silent as to any manner in which the improvement actually functions and instead, only claim the desired result." *DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616, 625 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019). This is "a frequent feature of claims held ineligible under § 101." *Elec. Power Grp.*, 830 F.3d at

1356.

The limitation that profile data must be received via "automatic electronic URL redirection" is also entirely conventional and cannot transform the claimed abstract idea into a patent-eligible invention.  *See* '307 patent at 16:47-49; '249 patent at 16:60-63.  Courts hold transmission or direction from a URL to be a "generic feature" that fails to add an inventive concept.  *See Weisner v. Google LLC*, 51 F.4th 1073, 1082 (Fed. Cir. 2022) (finding ineligible claims purporting to enhance search results using URLs of location histories); *see also Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 127 F. Supp. 3d 506, 527 (D. Md. 2015) (finding URL to be analogous to any tag that directs a person to an object or data located elsewhere, such as a card catalog at a library), *aff'd*, 850 F.3d 1332 (Fed. Cir. 2017).  Indeed, the "automatic electronic URL redirection" recited here is akin to a "widget,"[5] and courts have made clear that a "'widget' do[es] not provide any inventive concept because it is a standard web browser functionality."  *USC IP P'ship*, 576 F. Supp. 3d at 457; *see also USADATA, Inc. v. DATAWIDGET LLC*, 2021 WL 5084283 at *3 (D. Ariz. 2021) (a "widget does not amount to an inventive concept").  Therefore, "automatic electronic URL redirection" reflects "already available" technology that does not overcome *Alice* Step 2.  *See Customedia*, 951 F.3d at 1365 ("improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality").

Nor does the ordered combination of elements contain an inventive concept.  As discussed above, the sequence of steps in the claims at issue here is like that in the ineligible

---

[5] A widget is "a small software application that is designed to provide a specific piece of information (such as news, weather, or traffic updates) or a specific function (such as taking notes or controlling another application) on demand."  https://www.merriam-webster.com/dictionary/widget.

claims in *Content Extraction*, which called for "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Content Extraction*, 776 F.3d at 1347. The sequence is likewise similar to the ineligible claims in *Free Stream Media*, which called for "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device." *Free Stream Media*, 996 F.3d at 1361-62. The claims "do[] nothing more than describe the abstract idea of providing targeted content to a client device." *Id.* at 1366. Thus, they merely "use[] a conventional ordering of steps . . . with conventional technology to achieve [their] desired result." *Two-Way Media*, 874 F.3d at 1339.

In sum, nothing in the claims transforms the recited abstract idea into a patent-eligible invention.

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find claim 1 of the '307 patent and claim 1 of the '249 patent ineligible under Section 101 and dismiss Counts I and III of the Complaint.

Dated: May 24, 2023

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Of Counsel

David Silbert
Leo L. Lam
Katie Lynn Joyce
Anna Porto
Maile Yeats-Rowe
Oliver J. Fong
Janay M. Williams
KEKER, VAN NEST & PETERS LLP
dsilbert@keker.com
llam@keker.com
kjoyce@keker.com
aporto@keker.com
myeatsrowe@keker.com
ofong@keker.com
jwilliams@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400

*/s/ Robert M. Vrana*
Ryan P. Newell (No. 4744)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rnewell@ycst.com
rvrana@ycst.com

Attorneys for Defendants FREEWHEEL MEDIA, INC. and BEESWAX.IO.CORP.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 24, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs AlmondNet, Inc. and Intent IQ, LLC*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Robert M. Vrana*
Ryan P. Newell (No. 4744)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rnewell@ycst.com
rvrana@ycst.com

*Attorneys for Defendants FreeWheel Media, Inc. and Beeswax.io Corp.*